**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND**

RICARDO HOPKINS, Individually and as Parent and Next of Kin to DIONNE NALLS And ERICA HOPKINS

V. C.A. NO.: 04-373L

THE STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS; DEPARTMENT OF CHILDREN, YOUTH & FAMILY, JAY G. LINDGREN, JR., Individually and in his Capacity As Director of DCYF; THOMAS M. BOHAN, ESQ., Individually and in his Capacity as Executive Director Administration; THOMAS DWYER, Individually and In his Capacity as Associate Director Child Welfare Services; KEVIN AUCOIN, Individually and in his Capacity as Chief Legal Services, SUZAN MORRIS, Individually and in her Capacity as Senior Legal Counsel; PARTRICIA PETRELLA, Individually and in her Capacity as Legal Counsel to DCYF; ELLEN BALASCO, Individually and in her capacity as Legal Counsel to CASA; KAREN DEGENOVA, Individually and in her Capacity as a DCYF Investigator,

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Now come the named defendants in both their official and individual capacities and hereby move for summary judgment in the above-entitled case, pursuant to F.R.CP. 56, on the grounds that there is no triable issue of material fact in this case, and Defendants are entitled to judgment as a matter of law.

The reasons for the Motion are set forth in the attached Memorandum of Law in Support of Defendants' Motion for Summary Judgment.

Respectfully Submitted,

Defendants,
By their attorney,

PATRICK C. LYNCH
ATTORNEY GENERAL

Richard B. Woolley
Richard B. Woolley #1452
Assistant Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400 ext. 2293
Fax: (401) 222-2995

## CERTIFICATION

I, the undersigned, hereby certify that I sent via facsimile and first class mail, postage pre-paid, a true copy of the within Defendants' Motion for Summary Judgment on this 22nd day of June, 2006 to those indicated below:

Melissa L. DiFinzo

Joseph R. Daigle, Esq.
Gelfuso & Lachut Inc.
1193 Reservoir Avenue
Cranston, RI 02920

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF RHODE ISLAND**

RICARDO HOPKINS, Individually and as
Parent and Next of Kin to DIONNE NALLS
And ERICA HOPKINS

V. C.A. NO.: 04-373L

THE STATE OF RHODE ISLAND AND
PROVIDENCE PLANTATIONS; DEPARTMENT
OF CHILDREN, YOUTH & FAMILY, JAY G.
LINDGREN, JR., Individually and in his Capacity
As Director of DCYF; THOMAS M. BOHAN, ESQ.,
Individually and in his Capacity as Executive Director
Administration; THOMAS DWYER, Individually and
In his Capacity as Associate Director Child Welfare
Services; KEVIN AUCOIN, Individually and in his
Capacity as Chief Legal Services, SUZAN MORRIS,
Individually and in her Capacity as Senior Legal Counsel;
PARTRICIA PETRELLA, Individually and in her
Capacity as Legal Counsel to DCYF; ELLEN BALASCO,
Individually and in her capacity as Legal Counsel to
CASA; KAREN DEGENOVA, Individually and in her
Capacity as a DCYF Investigator,

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Now come the named defendants in both their official and individual capacities and hereby move for summary judgment, in that there is no triable issue of material fact in this case and the Defendants are each entitled to judgment as a matter of law. This case arises out of the Department of Children, Youth and Families' court-approved actions to investigate alleged sexual assault and protect young children from excessive and inappropriate discipline. This case should be dismissed pursuant to applicable law, as more fully set forth herein.

## I. PLEADINGS

Plaintiffs' Amended Complaint

On July 9, 2004 Plaintiffs filed a Complaint in Providence County Superior Court and thereafter on August 5, 2004 filed an Amended Complaint.

The Amended Complaint contains 124 paragraphs and six counts and a count for damages against the named Defendants in their official and individual capacities. The paragraphs in the Jurisdiction section broadly summarize Plaintiffs' claims as follows:

JURISDICTION

3. The within civil rights action involves the deprivation of Plaintiffs' constitutionally guaranteed rights by the Defendants pursuant to R.I.G.L. § 42-112-1 and 42 U.S.C. §1981, §1983, §1985, and §1988, seeking money damages and a declaration that the regulations and procedures followed by Defendants regarding the child abuse and neglect statutes violate the Fourth and Fourteenth Amendments of the U.S. Constitution and the State of Rhode Island Constitution;

4. Plaintiffs also seek damages for the communication of accusations made against Hopkins to his employers and other members of the community, for the coerced termination of his employment under threat by Defendants that the employers' state licenses would be in jeopardy, for the wrongful invasion of Plaintiffs' right to privacy and for negligence;

5. The Defendants acted individually and in concert, under color of state law and therefore, this action is brought against the Defendants individually and in their official capacities.

The Counts asserted are as follows:

Count I – Discrimination

Plaintiffs assert claims of discrimination and denial of equal protection based upon race.

Count II – Due Process

Count III – Tortious Interference/Contractual Relationships

Count IV – Defamation

Count V – <u>Wrongful Intrusion</u>

Count VI – <u>Negligence</u>

Count VI – <u>Damages</u>

The primary basis for Plaintiffs' Amended Complaint is that DCYF lacked the statutory and legal authority to initiate and conduct an investigation of Hopkins based on allegations made by Crystal Jones because she was 19 years old at the time she made the allegations.

<u>Defendants' Answer to Amended Complaint</u>

Defendants in their official and individual capacities answered Plaintiffs' Amended Complaint and asserted the following affirmative defenses:

<u>AFFIRMATIVE DEFENSES</u>

<u>First Affirmative Defense</u>

The First Amended Complaint fails to state a claim upon which relief can be granted in that it fails to articulate a legally sufficient factual basis for a finding of liability against any of the named defendants.

<u>Second Affirmative Defense</u>

This action is barred by the Statute of Limitations.

<u>Third Affirmative Defense</u>

Defendants have the benefit of Absolute Judicial Immunity.

<u>Fourth Affirmative Defense</u>

Defendants have the benefit of Absolute Prosecutorial Immunity.

<u>Fifth Affirmative Defense</u>

Defendants have the benefit of qualified/good faith immunity.

Sixth Affirmative Defense

Defendants have the benefit of the statutory immunity provided for the R.I. Gen. Laws 9-1-27.2.

Seventh Affirmative Defense

This action is barred by Res Judicata and/or Collateral Estoppel.

Eighth Affirmative Defense

This action is barred by the Discretionary Immunity Doctrine.

Ninth Affirmative Defense

This action is barred by the Public Duty Doctrine.

Tenth Affirmative Defense

Plaintiff Ricardo Hopkins assumed the risk of being subject to DCYF and Family Court Proceedings by his own inappropriate behavior toward his children and others.

Eleventh Affirmative Defense

Defendants have the benefit of Sovereign Immunity.

## II. PRELIMINARY STATEMENT

This action arises from petitions filed in the Family Court as a result of an investigation begun by DCYF on or about February 13, 2001, when a social worker at Butler Hospital telephoned the CANTS hotline reporting that a patient had disclosed that she had been sexually molested. The patient, Crystal Jones, was 19 years old at the time of the disclosure yet she was a committed child and still in the care and custody of DCYF. During the course of the investigation, Ms. Jones told the DCYF Child Protective Investigator, Karen DeGenova, that Ricardo Hopkins had sexually molested her on numerous occasions when she was between the ages of six and fourteen and in

foster placement where Hopkins was also in foster care. During the course of the investigation Ms. DeGenova interviewed respondents' three children, who revealed that their father would on occasion discipline them by tying their hands and feet and hitting them with a switch. Hopkins was indicated for sexual molestation and excessive and inappropriate discipline and tying/close confinement at the conclusion of this investigation.

Ms. DeGenova testified in Family Court at the probable cause hearing and Respondent Hopkins requested a continuance to depose Crystal Jones. In the interim, Hopkins filed a Motion to Dismiss based upon lack of jurisdiction and denial of due process. The trial court denied the Motion to Dismiss finding that there was "reasonable cause to believe that abuse and neglect circumstances exist …" and further finding that DCYF had an obligation to investigate and had the statutory authority and responsibility to do so pursuant to R.I. Gen. Laws § 40-11-7 and chapter 42-72 particularly in light of the fact that Crystal Jones, even though nineteen years old, is still committed to the care and custody of DCYF and thus the department remains responsible for her welfare; and secondly, that respondent was employed at Whitmarsh, a group home for children and DCYF is statutorally responsible for the certification of all child care personnel as well as for the administration of the CANTS system.

The Court found that the investigation was legitimately instituted by DCYF and that DCYF did have the authority to conduct an investigation following the disclosures of Crystal Jones. The Court also found that DCYF had presented sufficient evidence to meet its threshold burden at a probable cause hearing.

Hopkins filed a Petition for Writ of Certiorari in the Supreme Court challenging the Court's rulings but later dismissed the petition with prejudice.

In early July 2001 the Family Court, on motion by Hopkins, dismissed the Sexual Molestation count but let DCYF proceed with the excessive and inappropriate discipline aspect of the petitions, finding that "DCYF presented sufficient evidence upon which the Court could find by clear and convincing evidence, that respondent, Ricardo Hopkins, tied both Dionne and Douglas' hands and feet as a form of punishment and that he has struck both Dionne and Erica with a switch."

All petitions pending against Hopkins as a party were dismissed as of August 6, 2001.

The Family Court retained jurisdiction of the issue of if and when Hopkins would be reunified with his son Dionne in the context of a petition still pending against Dionne's mother. Hopkins was eventually reunified with his son by order of the Family Court.

## III. ARGUMENT

**Standard for Summary Judgment**

Pursuant to Federal Rule of Civil Procedure 56, the defendants are declaring that the evidence in this case is insufficient to support the Plaintiff's case. Summary judgment should be granted when "there is no genuine issue as to any material fact and…the moving party is entitled to judgment as a matter of law."

In determining whether or not there is a genuine issue as to any material fact, the Court must examine the record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor. Wojcik v. Town of North Smithfield, 874 F.Supp. 508, 515 (D.R.I. 1995), citing Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994).

The mere existence of an alleged factual dispute between the parties will not defeat a properly supported Motion for Summary Judgment. Id. A genuine issue is one that can be resolved only by a finder-of-fact. A material issue of fact "is one that may effect the outcome of the suit under the governing law." At the summary judgment stage, "the Court must decide whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law." Id. A dispute over some facts does not preclude summary judgment if all facts and reasonable inferences drawn from them support judgment for a moving party. National Credit Union Administration Board v. Regine, 795 F. Supp. 59 (D.R.I. 1992). Summary judgment is appropriate when, based upon pleadings, affidavits and depositions, there is no genuine issue as to any material fact, and the moving party is

entitled to judgment as matter of law. Hope Furnace Associates, Inc. v. Federal Deposit Insurance Corporation, 71 F.3d 39 (1st Cir. 1995).

I. Plaintiffs' 42 U.S.C. 1983 Claims Against the State of Rhode Island and its Named Officers and employees, In Their Official Capacities, Must Be Dismissed Pursuant to Will v. Michigan .

Plaintiffs brought this action against the named defendants, in their official capacity as well as in their individual capacities, pursuant to 42 U.S.C. 1983 and the Rhode Island Constitution. Although Plaintiffs Amended Complaint alleges that they bring this action against Lindgren, Bohan, Dwyer, Aucoin, Petrella, Balasco and DeGenova, in their individual capacities, the undisputed evidence shows that at all times these named defendants were acting in their official capacities, pursuant to the statutory mandates of R.I.G.L. § 40-11-1, et seq.

On its face, Plaintiffs' complaint fails to establish the jurisdictional predicate for a 42 U.S.C. 1983 action in this Court.

> "As it is well settled "that neither a state agency nor a state **official** acting in his **official capacity** may be sued for damages in a section 1983 action," *Johnson v. Rodriquez*, 943 F.2d 104, 108 (1st Cir. 1991)(citing ***Will v. Michigan*** *Dep't of State Police*, 491 U.S. 58, 71 109 S.Ct. 2304, 2312, 015 L.Ed.2d 45 (1989)), *cert. Denied*, 502 U.S. 1063, 112 S.Ct. 948, 117 L.Ed.2d 117 (1992); *see also Kaimowitz v. Board of Trustees, Univ. of Ill.*, ***701** 951 F.2d 765, 767 (6th Cir. 1991)(finding that, as neither the state nor its "alter ego" (state university) is a "person" for section 1983 purposes, neither is subject to suit under section 1983), ...*Wang v. New Hampshire Bd. Of Registration In Medicine*, 55 F.3d 598, 700, 701 (1st Cir. 1995).

This Court lacks subject matter jurisdiction and the complaint should therefore be dismissed.

II. Plaintiffs Claims Against the State of Rhode Island and Its Named Officers and Employees, in Their Official Capacities Are Barred by Eleventh Amendment Immunity.

The Eleventh Amendment bars suits brought against States in federal court when the State has not waived its sovereign immunity. Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996)); Pennhurst State Sch. & Hosp. V. Halderman, 465 U.S. 89, 98, 106 (1984). The Eleventh Amendment presupposes that each state is a sovereign entity in our federal system and that it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent. Seminole Tribe of Florida, 517 U.S. 54. The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. Amend. XI. This jurisdictional limitation recognizes that the States retain certain attributes, including sovereign immunity, although they are part of the federal structure. E.g., Seminole Tribe, 517 U.S. at 54; Pennhurst, 465 U.S. at 98. In the absence of consent by the State, an action may only be brought against the State if Congress has expressly abrogated the State' sovereign immunity. Pennhurst, 465 U.S. at 100.

Because States are immune from suit under the Eleventh Amendment, suits against State agencies in which a judgment would be satisfied out of public funds are also prohibited. See Quern v. Jordan, 440 U.S. 332, 337 (1979)("[A] suit in federal court by private parties seeking to impose a liability which must be paid from public funds in the

state treasury is barred by the Eleventh Amendment"). The Rhode Island Department of Children, Youth and Families is a state agency for Eleventh Amendment purposes. As DCYF has not consented to suit in this case, Plaintiff's claims are barred unless Congress has expressly abrogated the States' sovereign immunity from suit in the statute under which he sues.

Eleventh Amendment immunity also applies to officials of the State sued in their official capacity, because "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 166 (1985); accord Edelman v. Jordan, 415 U.S. 651, 663. See also Eaglesmith v. Ward, 73 F.3d 857, 859 (9th Cir. 1995) (affirming dismissal of § 1983 claim against California school superintendent on Eleventh Amendment grounds). Because Plaintiff's suit names the State, an agency of the State, namely DCYF and its employees in their official, as well as individual capacities. Plaintiffs' claims are barred by the Eleventh Amendment.

III. Plaintiffs' Claims Against the Defendants In Their Individual and Official Capacities Are Barred By the Statute of Limitations.

Crystal Jones disclosed Ricardo Hopkins' alleged sexual abuse on February 12, 2001. Karen DeGenova was assigned the case on February 13, 2001 and her investigation lasted no more than 10 days and on or about February 22, 2001 a Petition based upon her investigation was filed in Family Court. Hopkins' employers became aware of the disqualifying information regarding him in late February 2001 and on or about March 8, 2001. Karen DeGenova testified in the Family Court on May 21, 2001. On July 3, 2001 the probable cause hearing regarding sexual abuse concluded and the Court dismissed those charges. Most, if not all, of the actions taken by the Defendants in this case were taken well before July 3, 2001. Plaintiffs' counsel did not bring suit

against these Defendants until at the earliest July 9, 2004 when the original complaint was filed/docketed in the Providence County Superior Court more than three years after the events Plaintiffs complain of took place.

Plaintiffs' claims against the named Defendants in both their official and individual capacities are barred by Rhode Island's three-year statute of limitations for torts. Marrapese v. State of Rhode Island, 500 F.Supp. 1207 (D.R.I. 1980).

IV. The Named Defendants Are Entitled to Absolute Judicial Immunity In This Action.

Decisions regarding the placement and monitoring of abused or neglected children are cloaked with absolute judicial immunity. Martin v. Children's Aid Society, 215 Mich. App. 88, 544 N.W.2d 651 (1996); Babcock v. Tyler, 884 F.2d 497 (9th Cir. 1989); Vosburg v. Dept. of Social Services, 884 F.2d 133 (4th Cir. 1989); Coverdell v. Dept. of Social & Health Services, 834 F.2d 758 (9th Cir. 1987); Meyers v. Conti Costa Co. Dept. of Social Services, 812 F.2d 1154 (9th Cir. 1987); Kursawz v. Mueller, 732 F.2d 1456 (6th Cir. 1984).

All actions taken by the named defendants were subject to the approval of and were in fact approved by the Rhode Island Family Court. The named Defendants and each of them are entitled to absolute judicial immunity.

V. Defendants Are Entitled to Absolute Prosecutorial Immunity For Actions Taken In This Case.

In Thomason v. SCAN Volunteer Services, Inc., 85 F.3d 1365 (8th Cir. 1996), the Court held that Child Welfare Authorities were absolutely immune from liability in civil rights actions for their initiation of ex parte proceedings in State court that led to award of temporary protective custody of a child to the State. To the extent Wordlaw and SCAN

are sued for initiating the judicial proceedings, Wordlaw's role was functionally comparable to that of a prosecutor. Myers v. Morris, 810 F.2d 1437 (8th Cir.) (Prosecutor is absolutely immune for initiating neglect proceedings in Family Court) (Citing Mazor v. Skelton, 637 F.Supp. 330, 334-335 (N.D. Cal. 1986) (role of social worker in filing proceedings to protect abused minors is functionally comparable to prosecutor's initiation of the judicial process, thus warranting absolute immunity) cert denied 484 U.S. 828, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987).

The Defendants in this case either initiated or participated in the prosecution of proceedings and should be entitled to the same absolute immunity.

VI. This Case should be Dismissed Against the Defendants Pursuant to the Doctrine of Qualified Immunity.

Qualified immunity protects the Defendants, Department of Children, Youth and Families, and the named Defendants individually in the exercise of their discretion "from personal liability for civil damages, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a person would have known." Harlow v. Fitzgerald, 457 U.S. 800 (1982).

In Anderson v. Creighton, 483 U.S. 635; 107 S.Ct. 3034 (1987), the United States Supreme Court defined the scope of qualified immunity as follows:

> "[G]overnment officials performing discretionary functions [have] qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought to be consistent with rights they are alleged to have violated. Somewhat more concretely, whether an official protected by qualified immunity may be held to be personally liable for an alleged unlawful action, generally turns on the 'objective reasonableness' of the action assessed in the light of the legal rules that were 'clearly established' at the time it was taken." (citations omitted).

The Court defined "clearly established" by stating that 'the contours of the right must be sufficiently clear that a reasonable official would understand that what he was doing violates that right.' Anderson at page 640.

Qualified immunity as a matter of public policy mandates that insubstantial claims against the government and its officials not proceed to trial. Harlow v. Fitzgerald, 457 U.S. 800 (1982) (*citing* Butz v. Economou, 438 U.S. 478 (1978)). The U.S. Supreme Court in Harlow v. Fitzgerald, redefined qualified immunity in such a way as to "permit the resolution of many insubstantial claims on summary judgment" and to avoid "subject[ing] government officials either to the cost of trial or the burdens of broad reaching discovery" in cases wherein the legal norms the officials are alleged to have violated are clearly established at the time. Mitchell v. Forsyth, 472 U.S. 526 (1985) (citations omitted). Entitlement to qualified immunity gives a government official immunity from the process of litigating the case itself rather than merely affording a defense to liability.

The defense of qualified immunity offers sanctuary not only to government officials who act with impeccable propriety, but also to those who err but could not have reasonably understood that their actions infracted a prospective plaintiff's federally assured rights." deQuintero v. Aponte-Rogue, 974 F.2d 226, 228 (1st Cir. 1992) (citations omitted).

The First Circuit has held that analyzing qualified immunity is a two-step process. Buenrostro v. Collazo, 973 F.2d 39, 42 (1st Cir. 1992). "[A] court must ascertain whether the plaintiff has alleged, with the requisite particularity, that a state actor violated some right that emanated from federal law." Id. (*citing* Siegart v. Gilley, 111 S.Ct. 1789, 1793

(1991)). Next, it must "ascertain whether the right at issue was 'clearly established' at the time of the infringement." Id. at 42. (*Citing* Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

In the First Circuit, qualified immunity is alive and well. *See, e.g.,* Vazques Rios v. Hernandez Colon, 819 F.2d 319 (1st Cir. 1987); Nunez v. Izquirdo-Mora, 834 F.2d 19 (1st Cir. 1987); Figueroa-Rodrigues v. Acuino, 863 F.2d 1037 (1st Cir. 1988); Pedro-Cos v. Blais Contreras, 976 F.2d 83 (1st Cir. 1992).

Immunity is to be denied, and a compensatory award will be appropriate, **only if** the official has acted with an impermissible motivation or with such disregard of the person's clearly established constitutional rights that his action cannot reasonably be characterized as being in good faith. Wood v. Strickland, 420 U.S. 308 (1975).

Although a government official may have violated a person's constitutional rights, the official retains immunity if he has displayed a state of mind free from malice and has acted with permissible motive. Moreover, the official must act reasonably in light of established law and the circumstances of the case.

As noted, *infra*, this Court and the First Circuit have consistently held that qualified immunity is a complete bar to these types of actions. Watterson v. Page, 987 F.2d 1 (1st Cir. 1993); Frazier v. Bailey, 957 F.2d 920 (1st Cir. 1992); Charron v. Picano, 811 F.Supp. 768 (D.R.I. 1993); DeCosta v. Chabot, No. 94-2131 (1st Cir. 1995), per curiam; and Wojcik v. Town of North Smithfield, No. 95-1594 (1st Cir. 1996).

In each of the above cases, the Courts held that the rights plaintiff alleges herein were violated by this defendant are not clearly established.

In Watterson v. Page, supra, a mother, grandparents, and two minor children brought a §1983 action against psychologists for violation of rights similar to those claimed herein. They alleged that the psychologist was negligent, testified falsely, and withheld evidence. Despite the seriousness of these charges, the Court dismissed the complaint on qualified immunity grounds even though it was not relied on by defendant when opposing plaintiffs' Motion for Summary Judgment. Id. at 7, Fn. 3. The Court held that taking all of plaintiffs' allegations as true, they did not state a constitutional claim under any theory. Id. at 8-9.

The facts in the case of Charron v. Picano, 811 F.Supp. 768 (D.R.I. 1993), are strikingly similar to the case at hand. In that case, a state official authorized removal of a child from a home after the physician reported suspected child abuse in a Physician's Report of Examination. The Court noted that:

> "Under Rhode Island law, a physician treating a child who appears to have been injured by other than accidental means, may cause a child to be kept in a hospital or licensed child care facility for up to 72 hours, with or without parental consent, by completing a section of the report provided for that purpose."

*citing*, R.I. General Laws §40-11-5(a). In that case, the physician did not take physical custody of the child, but left it up to DCYF's discretion.

As a result of the report, DCYF dispatched an investigator to investigate the case. The investigator interviewed the physician, the parents and the children. As a result of the interviews, the investigator placed the child with relatives. Thereafter, the Plaintiffs filed suit against the Defendants for unlawfully interfering with the family's liberty interests pursuant to 42 U.S.C. §1983.

The Defendants moved for summary judgment with respect to the §1983 claim, and while the objection to the summary judgment was pending, Plaintiffs moved for leave to file an amended complaint adding individually named defendants. The Magistrate Judge recommended denial of the Motion to Amend on the ground that the proposed amendment would require "in effect, that the case 'begin anew' and, therefore, would unfairly prejudice the defendants." The Magistrate Judge found that "the Charrons had no evidence that Fraieli acted individually, rather than in his official capacity. He further found that Fraieli had not been sued personally and would be unfairly prejudiced by now being required to defend himself in that capacity." Id. at Page 770.

The District Court ruled that the Plaintiffs were seeking to avoid summary judgment by moving to amend their complaint. In determining whether or not the Court would allow the Plaintiff to amend the Complaint, the Court found that the proposed amendment should not be allowed because it amounts to nothing "more than an exercise of futility." Id. at Page 772. The Court found that the doctrine of qualified immunity would insulate the DCYF worker for personal liability claims of the Plaintiff. The Court further held that Defendants are entitled to file a Motion for Summary Judgment on qualified immunity grounds and that such is subject to an interlocutory appeal.

The Court concluded that Rhode Island law specifically provides for the temporary removal of a child from the home upon certification by a physician that the child has sustained injuries through other than accidental means. Additionally, the statute exonerates state officials from liability for acting on such certification. See, Curtis v. State Department for Children and Their Families, 522 A.2d 203 (R.I. 1987). The Court found that the report of the physician and the statements obtained from the children

provided ample justification for concern with respect to the child's welfare. Accordingly, based upon the fact that the DCYF worker would be entitled to qualified immunity from the suit that would be filed against him if the amendment were allowed, the Court denied the Motion to Amend the Complaint.

The allegations of Plaintiffs' Amended Complaint fall squarely within the scope of the analysis set forth in Hatch v. Department For Children, Youth & Families, 274 F.3d 12 (1st Cir. 2001) and the named state Defendants have the benefit of qualified immunity in this case, especially since Plaintiffs have failed to conjure up any facts in discovery which would deprive the Defendants of this defense.

Hatch dealt with the temporary removal of a child from the home by a DCYF caseworker. The child was first placed under a "physicians hold" pending the institution of proceedings in the Family Court pursuant to R.I. Gen. Laws § 40-11-5(a). The DCYF caseworker immediately took the child into protective custody of DCYF. He conducted an investigation and filed a petition for an ex party order of temporary custody in the Family court which was granted. The child remained in DCYF custody pending further hearings. About a month later the Family Court heard testimony and determined that there was no probable cause to believe that the child had been abused. The Court concluded that returning home would not place the child at risk, rescinded its order granting provisional custody to DCYF and returned the child to the parent.

The Court held, in part, that:

> [14] The appellant's proposed amended complaint focuses on such a temporary custodial interruption: Brown's decision to take John into state custody prior to obtaining a Family Court order. The Court has not had occasion to formulate the contours of the constitutional rule under which a state official

> lawfully may take temporary custody of a child during an investigation of abuse or neglect, nor has this court dealt definitively with the issue. Other courts have grappled with it, however, and most of them have concluded that a case worker – we use that term generically – may place a child in temporary custody when he has evidence giving rise to a reasonable and articulable suspicion that the child has been abused or is in imminent peril of abuse. *See, d.g., Brokaw v. Mercer County*, 235 F.3d 1000, 1019 (7th Cir. 2000); *Croft v. Westmoreland County Children & Youth Servs.*, 103 F.3d 1123, 1126 (3d Cir. 1997); *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996); *Mansano v. S.D. Dep't of Soc. Servs.*, 60 F.3d 505, 511 (8th Cir. 1995). The justification for such a rule is easily grasped: where a state official has a reasonable basis to suspect abuse, "the interest of the child (as shared by the state as parens patriae) in being removed from that home setting to a safe and neutral environment outweighs the parents' private interest in familial integrity as a matter of law." *Thomason v. SCAN Volunteer Servs., Inc.*, 86 F.3d 13654, 1373 (8th Cir. 1996).
>
> Hatch at 21.
>
> The Court went on to state:
>
> "… We reject the appellant's view that a caseworker, even after he has a reasonable suspicion of child abuse, must conduct a full-blown investigation and elevate that suspicion to the level of probable cause before assuming temporary custody. We hold instead that the Constitution allows a caseworker to take temporary custody of a child, without a hearing, when the caseworker has a reasonable suspicion that child abuse has occurred (or, alternatively, that a threat of abuse is imminent). It follows, therefore, that a parent's right to the care, custody, and control of a minor child is inviolate unless a case worker has such a suspicion."
>
> Hatch at 22.

In the context of the Court's analysis of the taking custody of a child without a hearing, in a footnote at page 21, the Court notes that:

> Once the state takes temporary custody of a child, it must follow procedures adequate to justify that detention. *See Jordan v. Jackson*, 15 F.3d 333, 345-46 (4th Cir. 1994). This process often takes the form – as here – of an ex parte order of temporary custody, followed by a hearing on the merits of the allegations of abuse. *E.g., Thomason v. SCAN Volunteer Servs., Inc.*, 85 F.3d 1365, 1369-70 (8th Cir. 1996).

DCYF, through Child Protective Investigator Karen DeGenova and DCYF Legal Counsel, filed a Petition in Family Court. The Family Court retained jurisdiction and control of Dionne Nalls and Erica Hopkins' custody with DCYF throughout the next few months and it was not until some time following dismissal of the pending petition against Hopkins that the Family Court ordered reunification with his son Dionne in the context a petition involving Dionne's mother that Hopkins voluntarily participated in.

In Hatch, the Court concluded that:

> "... The record shows that Brown had a reasonable basis both for suspecting child abuse and for believing John to be in danger (and, therefore, that he acted justifiably in taking the boy into temporary custody). The fact that this suspicion proved, in the long run, to be unfounded does not strip Brown of his entitlement to qualified immunity in regard to a claim for damages. *See Malley*, 475 U.S. at 341, 106 S.Ct. 1092 (emphasizing that the qualified immunity standard protects many mistaken judgments); *Brennan v. Hendrigan*, 888 F.2d 189, 192 (1st cir. 1989) ..."
>
> Hatch at 25.

In the case now before the Court, Plaintiffs have sued DCYF employees in their individual capacities who were not even personally or officially involved in the petitions regarding either minor plaintiffs or Hopkins.

The named individual defendants who were involved clearly had a reasonable basis for all actions they took in relation to the Plaintiffs and all their actions were justified under the circumstances they were presented with.

**Qualified Immunity As to Each Defendant**

**Jay Lindgren** – Although Jay Lindgren is named in his individual as well as his official capacity as Director of the Department of Children, Youth and Families, there is simply no evidence whatsoever that he had any knowledge of, or personal involvement in actions taken by DCYF regarding Plaintiffs. Plaintiffs' action against Lindgren, in his individual capacity, has no factual or legal basis whatsoever.

**Suzan Morris** – Suzan Morris is sued individually and in her capacity as Senior Legal Counsel of DCYF. At all times material to this action Suzan Morris was employed by DCYF as Regional Director of Region 3 covering the South County and Kent County area of Rhode Island. She has never been Senior Legal Counsel for DCYF, has never been licensed to practice law and has no knowledge or involvement with Ricardo Hopkins or his children whatsoever.

**Ellen Balasco** – At all times material to this action Ellen Balasco was employed by the State of Rhode Island Family Court Judiciary as a Staff Attorney for the Office of the Court Appointed Special Advocate. Balasco's only involvement in the Ricardo Hopkins Family Court proceedings was that she was appointed to act a guardian ad litem for Crystal Jones, a complaining witness against Ricardo Hopkins, and in that capacity Balasco accompanied Crystal Jones to her deposition held in the Garrahy Judicial Complex conducted by counsel for Ricardo Hopkins. She had no other contact with or knowledge of the allegations made by Hopkins in this case.

**Thomas M. Bohan** – At all times material to this action Thomas M. Bohan was Executive Director of DCYF. He first became aware of allegations of sexual molestation and physical abuse allegations against Ricardo Hopkins when this lawsuit was filed. Bohan doesn't have any recollection of Mr. Hopkins or the allegations against him prior to the filing of this lawsuit.

Thomas M. Bohan did not know Ricardo Hopkins' race until after this lawsuit was filed, it makes no difference to Mr. Bohan what race a person is when they encounter DCYF and Mr. Bohan had no personal involvement with the Ricardo Hopkins case.

**Thomas Dwyer** – At all times material to this action Thomas Dwyer was employed by DCYF as the Associate Director for Child Protection and Child Welfare. In that capacity he supervised the Division of Child Protective Services as well as the Division of Social Services.

Mr. Dwyer has a vague recollection of discussions of the Hopkins case.

To the best of his recollection, the principle concern in the Hopkins case was around the safety of Mr. Hopkins' young children. The concern was based upon allegations that Mr. Hopkins had sexually molested a child, Crystal over a period of approximately six years.

That as the State child protective agency, we had a duty and obligation to assess the safety and well being of Mr. Hopkins' children. In order to do so, we had to interview Crystal and based on that interview, determine if we still had concerns regarding Mr. Hopkins' children.

That based upon Crystal's statements, we felt that we had the need to interview Mr. Hopkins' children and determine if there existed the presence of safety and risk factors.

That while he has no specific recollection regarding Mr. Hopkins' employment status, if DCYF had cause to believe that an individual, who may pose a risk to children, was working in a DCYF licensed facility, DCYF would request that the agency resubmit a background check on the individual and, based on that, take appropriate action.

That at no time during his involvement with the case was Mr. Hopkins' race/ethnicity a factor in any decision-making and he was not aware of Mr. Hopkins' racial background, until he read it in the lawsuit.

For purposes of Summary Judgment, assuming that Thomas Dwyer was involved in notification of Hopkins' employers regarding his acquiring disqualifying status, such notification would be appropriate and required pursuant to R.I. Gen Laws § 40-13.2-1(6); DCYF Policy: 700:0105 "Clearance of Agency Activity – Addendum, Disqualifying Information" and the Holding in State DCYF v. RI Council 94, AFL-CIO, 713 A.2d 1250 (R.I. 1998).

**Karen DeGenova** – Karen DeGenova was the Child Protective Investigator assigned to investigate allegations of sexual abuse/sexual molestation made by Crystal Jones to a social worker at Butler Hospital who called the DCYF Hot Line pursuant to RI Gen. Laws § 40-11-3(a). Throughout her investigation of the original allegations and the statements of Hopkins children and others regarding excessive and inappropriate discipline, DeGenova sought the advice and instructions of her immediate supervisor, Edward Albanese. She also discussed the case with Thomas Dwyer and sought the

review and approval of DCYF legal counsel before Petitions were filed in Family Court. She was told by her Supervisor that in light of the pending sexual abuse investigation, Mr. Hopkins could not be living in the same house with his young daughter because that would pose a risk to her, and so she had to go back to the house and ask Mr. Hopkins to leave the home voluntarily or DCYF would have to take custody of his child.

DeGenova's investigation of the Hopkins matter lasted less than 10 days. She interviewed at least 18 people including the Complainant Crystal Jones, the Plaintiff Ricardo Hopkins, his foster mother and his children. She corroborated the allegations made by Jones and the children and the Family Court found on more than one occasion that the Complainant was believable, that the children's descriptions of being tied up and hit with a switch was credible and that DCYF has preliminarily sustained their burden of showing probable cause.

There is absolutely nothing in the record to show that Karen DeGenova did anything other than a thorough objective investigation of issues involving Ricardo Hopkins. She is clearly entitled to qualified immunity.

**Patricia Petrella** – At all times material to this action Patricia Petrella was employed by DCYF as Senior Legal Counsel and her job responsibilities were to prosecute child abuse and neglect cases and to prepare trial discovery requests, prepare witnesses and prosecute child abuse proceedings. Patricia Petrella was assigned to handle the prosecution of the DCYF Petitions involving Ricardo Hopkins. There is no evidence whatsoever that Patricia Petrella did anything other than present the Department's case against Ricardo Hopkins in an objective professional manner and any orders regarding Hopkins access to

and eventual reunification with his children, including Dionne, was done by the Family Court.

Although there were no petitions pending naming Ricardo Hopkins as a party after August 6, 2001, the Family Court retained jurisdiction of the issue of reunification of Hopkins with his son Dionne in the petition captioned In Re Nalls, Dionne FC No. 1996-2572-04 and any delay in the reunification of Hopkins with his son Dionne was as a direct result of orders entered by the Family Court in that case after hearings where Hopkins was represented by counsel and was heard on the merits.

**Kevin Aucoin** – At all times material to this action, Kevin Aucoin was Associate Director of Legal Services for DCYF, in function Chief of Legal Services for DCYF. Kevin Aucoin was Patricia Petrella's Supervisor and was involved in the Hopkins case in that capacity. His function was to consult with her concerning the prosecution of the petitions pending in Family Court regarding Ricardo Hopkins and to participate in responding to the Petition for Certiorari filed on behalf of Hopkins in the Rhode Island Supreme Court.

For purposes of Summary Judgment, assuming that Kevin Aucoin was involved in notification of Hopkins' employers regarding his requiring disqualifying status, such notice would be appropriate and required pursuant to R.I. Gen. Laws § 40-13.2-1(6); DCYF Policy: 700:0105 "Clearance of Agency Activity – Addendum, Disqualifying Information" and the holding in State DCYF v. RI Council 94, AFL-CIO, 713 A.2d 1250 (R.I. 1998).

The DCYF v. Council 94 case involved a Training School employee who had been convicted of charges of "domestic assault" wherein the Rhode Island Supreme

Court upheld the DCYF decision to disqualify the employee from supervisory child care employment at the Training School. The Court found that the mere fact that the Certification of Child Care and Youth Serving Agency Workers Act and Department of Children Youth and Families (DCYF) policies are directed primarily to applicants for employment, rather than to existing employees, does not mean that DCYF is powerless to terminate any of its existing child care workers if it otherwise has just cause to do so. The relevance of this case to the matter before this Court is stated succinctly in the concurring and dissenting Opinion of Judge Goldberg, 713 A.2d 1250 at pages 1259, 1260 (R.I. 1998) wherein it states "I also agree with the Court's conclusion that the Certification of Child Care Personnel Act (act) must be construed to apply to both present and future employees of DCYF who are subject to termination from service upon the discovery of a disqualifying event."

DCYF had a statutory obligation and authority to make Hopkins' employers aware that he had acquired disqualifying status.

Each and all of the Defendants, in their individual capacities, are entitled to qualified immunity in this action.

VII. <u>This Action Is Barred by Res Judicata and Collateral Estoppel.</u>

Throughout all proceedings in Family Court and essentially from the outset of the investigation commenced by DCYF on February 12, 2001 Plaintiff Ricardo Hopkins was represented by Counsel as were his children who were represented by a guardian *ad litem*.

Within a few days of the call from Butler Hospital that set this matter in motion the Family Court assumed jurisdiction and control over Plaintiff's familial relationships.

This jurisdiction and control continued uninterrupted until the Family Court ordered reunification of Ricardo Hopkins with Dionne Nalls in In the Matter of Nalls, Dionne, FC 1996-2572-04 in about December 2001.

On March 30, 2001 Counsel for Ricardo Hopkins filed a Motion to Dismiss in the Family Court. The Motion to Dismiss claimed in essence that Ms. Jones' disclosures do not constitute child abuse as statutorily defined and therefore, DCYF not only lacked legal authority to conduct the subsequent investigation, but that it conducted the investigation in violation of its own rules and guidelines. That as a consequence, Mr. Hopkins has been deprived of his constitutionally protected rights to due process. The petitions should be therefore dismissed and all DCYF records and findings expunged on the theory that the original investigation is tainted and all evidence and findings obtained in furtherance thereof are nothing more than fruit from a poisonous tree.

In rejecting Hopkins' arguments and denying the Motion to Dismiss the Court made the following findings and comments.

"… however, these petitions were not filled to protect Crystal Jones, rather they were filed to protect Erica Hopkins and Dionne Nalls. Defined by Rhode Island State Laws, and there is "reasonable cause to believe that abuse and/or neglect circumstances exist or it could hardly be argued from what is now generally accepted about persons who sexually abuse children, that an identified child molester, at least until such time as he or she successfully completes treatment, does not pose a risk of harm to any child that may come under his or her care. Judge Hurst made this very clear in Marold versus Fendetti, wherein she wrote: "The State unquestionably possesses a strong interest in protecting children from the infliction of physical harm and from exposing them to the risk of sexual

predators." It may be argued that the Butler Hospital social worker had no duty to notify DCYF of Crystal's disclosures given the fact that she was nineteen years old. But once having been notified, I believe, DCYF had an obligation to investigate, not necessarily because such an investigation was mandated by 40-11-7, but rather because it falls within the purview of its responsibilities under 40-11-7 and Chapter 42-72, particularly in light of the fact that Crystal Jones, even though nineteen years old, is still committed to the care and custody of DCYF and thus the department remains responsible for her welfare; and secondly, that respondent was employed at Whitmarsh, a group home for children and DCYF is statutorily responsible for the certification of all child care personnel as well as for the administration of the CANTS system. Respondent cites the Marold case for the proposition that "by definition an act of child abuse or neglect can only be committed by a person responsible for the child's welfare." That case also states, however, "that a perpetrator of an act of abuse or neglect may ultimately be determined to be a person not falling with the statutory definition of responsible person should not hinder the DCYF's investigation powers so long as the investigation is legitimately instituted." In this case, I find that the investigation was legitimately instituted for the above stated reasons, namely that Crystal was a committed child and respondent an employee of a child care facility, as well as for the fact that the reported abuse allegedly occurred in a DCYF licensed foster home, albeit the license is not longer active. Moreover, as Erica and Dionne are the children alleged to be at risk in the pending petitions, respondent is clearly a person responsible for their welfare."

Once the Department substitutes the allegations and files a petition it is up to the Court to determine whether removal of the child or other interim orders are appropriate.

The Court found that "DCYF's case is predicated upon statements made by Crystal to the child protective investigator. They are hearsay statements to be sure, yet permissible in probable cause hearings. They constitute "credible hearsay" if for no other reason than the original disclosures were made in a hospital setting, presumably for the purposes of diagnosis or treatment. These statements are deemed so reliable that they constitute an exception to the rule against hearsay evidence. Standing alone, prior to any possible undermining of the case by respondent, DCYF has presented sufficient evidence to meet its threshold burden at a probable cause hearing."

On April 27, 2001, the Court entered an order reflecting its findings made on April 12, 2001 which states as follows:

**DECREE**

This matter came to be heard before Mr. Justice Paul Suttell on the 12th day of April, 2001 on the petition of the Department of Children, Youth and Families ("DCYF"), and after consideration thereon, it is hereby:

**FINDINGS OF FACT:**

1. That the Court finds that Crystal Jones is not a child as statutorily defined in the child abuse and neglect statute.
2. That the Court finds the Department of Children, Youth and Families had an obligation and authority under RIGL 40-11-1 ET-SEQ and RIGL 42-72-1 ET-SEQ to investigate because of the following reasons:
    a. Crystal Jones is a committed child under the care and custody of DCYF.
    b. Ricardo Hopkins was employed by Whitmarsh, a childcare facility.
    c. The alleged abuse was done in a DCYF licensed foster care placement

3. That the Court also finds Sarah Hopkins was a credible witness.
4. That Sarah testified that she was with Crystal Jones all the time which doesn't necessarily mean that Ricardo did not abuse Crystal but makes it less likely.

**ORDERED, ADJUDGED, AND DECREED:**

1. That respondent's motion to dismiss is denied.
2. That Ricardo Hopkins is allowed to return home; that either Stephanie or any able appropriate adult cleared by DCYF may supervise contact between father and child.
3. That Ricardo Hopkins is hereby restrained from having any unsupervised contract with any child who is a subject of the pending petitions.
4. That Ricardo Hopkins is further restrained and enjoined from exercising any form of physical discipline, including corporal punishment, on any child.
5. That the no contact order between Ricardo Hopkins and Dionne remains status quo.
6. That the Department is to have reasonable unannounced access to the home.
7. That this matter is continued for pretrial to April 26, 2001.
8. That the discovery is to be provided to the State.
9. That a witness list is to be provided by respondent.

On May 18, 2001 counsel for Ricardo Hopkins filed a petition for *Writ of Certiorari* seeking to overturn the Family Court's order. The jurisdictional, due process, and other arguments made in the petition for *Certiorari* are the same as those made by the Plaintiff in his Motion to Dismiss in Family Court.

On December 5, 2003 Counsel for Ricardo Hopkins voluntarily dismissed his petition for *Writ of Certiorari,* with prejudice.

Stays having been denied in both the Family and Supreme Court the Hopkins matter proceeded at trial on May 21, 2001, June 4, 2001, and June 6, 2001. On June 6, 2001, Counsel for Ricardo Hopkins made a Motion to Dismiss on the record. The Court reserved decision on the Motion on that date.

On July 3, 2001 the Trial Justice gave his decision on Hopkins' Motion to Dismiss.

On August 8, 2001 Justice Suttell entered a Decree based upon the Court's decision of July 3, 2001 which reads as follows:

**DECREE**

This matter came on to be heard before Mr. Justice Suttell on the 3rd day of July, 2001 on the petition of the Department of Children, Youth and Families, and after consideration thereon, it is hereby:

**ORDERED, ADJUDGED, AND DECREED:**

1. That after weighing the evidence adduced at trial, the Court cannot find with clear conviction that respondent sexually abused Crystal Jones two or three times a week over an eight year period.
2. That the allegations of neglect predicated upon Ms. Jones' assertions of sexual abuse must, therefore, fail.
3. That the Court finds, therefore, that the Department of Children, Youth and Families has presented sufficient evidence upon which the Court could find by clear and convincing evidence that respondent, Ricardo Hopkins, tied both Dionne's and Douglas" hands and feet as a form of punishment, and that he has struck both Dionne and Erika with a switch.
4. That the Court finds that there is no evidence that respondent father ever administered punishment cruelly, maliciously or with intent to harm. What crosses the line, however, is the binding of the children's hands and feet. This creates a great risk of physical and emotional harm to the children, and in my judgment, in appropriate and excessive.
5. That the Court finds that if, after respondent is allowed to present his case, the Department of Children, Youth and Families is able to sustain this allegation, it will have proven neglect by clear and convincing evidence.
6. That the petition may be dismissed as to Stephanie Morgan, and continued for trial as to Mr. Hopkins on the sole issue of inappropriate and excessive discipline.
7. That this case is continued to July 10, 2001 on that issue.

Having dismissed his petition for *Certiorari* with prejudice, Plaintiff cannot now challenge the Court's decision of April 12, 2001 and the decree entered thereon on April 27, 2001. Both the decision and decree were entered after Plaintiff, represented by Counsel, had a full and fair opportunity to litigate the issues that were or could have been presented in the Family Court. DiPinto v. Sperling, 9 F.3d 2 (1st Cir. 1993); Miles Un-Ltd., Inc. v. Town of New Shoreham, 602 F.Supp. 238 (D. R.I. 1985).

Furthermore, having had the benefit of rulings in their favor Plaintiffs are bound by unappealed findings and orders of the Family Court including the July 3, 2001 decision and August 8, 2001 order entered by the Family Court, and the Family Court's orders with respect to Ricardo Hopkins' reunification with his son Dionne in In The Matter of Dionne Nalls FC No. 1996 – 2572 – 04. Plaintiffs are estopped from challenging such decisions and orders in this proceeding by the doctrine of *collateral estoppel.*

In re Boudakian,137 B.R. 89 (Bkrtcy.D.R.I.,1992)

VIII. There Is No Factual or Legal Basis For An Award of Punitive Damages In This Action.

Punitive damages may be assessed in a § 1983 action "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally-protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983) (Prison guard could be held liable for punitive damages under a finding of reckless disregard of, or indifference to, the right or safety of others).

There is no evidence whatsoever of evil motive on the part of any defendants in this action and, in fact, the Family Court found that DCYF and its named employees had both the obligation and statutory authority to investigate the allegations against Hopkins.

Although the Court ultimately ruled in favor of Hopkins, the Court found that the Department had presented sufficient evidence to meet its threshold burden at a probable cause hearing. Throughout the time at issue in this case, everything the Defendants did was subject to approval of the Family Court. The Court's findings with respect to the basis for Defendants proceeding against Hopkins show a complete absence of any reckless disregard or callous indifference toward Plaintiff but instead show that Defendants acted in a professional, objective and appropriate manner throughout their respective dealings with Hopkins and his children.

IX. Defendants in Their Individual Capacities Are Entitled to the Defenses of Qualified Immunity, Prosecutorial Immunity and Judicial Immunity With Respect to Plaintiffs' Rhode Island Constitutional Claims.

On at least two occasions the Rhode Island Supreme Court has indicated that in the appropriate case the doctrine of qualified immunity might well be applied by the State Supreme Court in relation to alleged violations of State statutes. Ensey v. Culhane, 727 A.2d 687 (R.I. 1999). Pontbriand v. Sundlun, 699 A.2d 856, 867 (R.I. 1997).

Counsel respectfully submits that the named Defendants in their individual capacities are entitled to the common law immunity defenses of judicial, prosecutorial and qualified immunity and that Plaintiffs Rhode Island constitutional claims should be denied and dismissed.

X. Sovereign Immunity Bars Plaintiffs' Rhode Island Constitutional Claims Against the State of Rhode Island and the Official Capacity Defendants.

The Rhode Island General Assembly enacted the Rhode Island Civil Rights Act – R.I. Gen. Laws §§ 42-112-1, et seq. without any express language that would waive the State of Rhode Island Sovereign Immunity. In the absence of such a waiver, the State of Rhode Island and its named employees in their official capacities are immune from

Plaintiffs Rhode Island constitutional claims in this case. Mitchell v. State Dept. of Corrections, 2003 WL 22389814 (R.I. Super. 2003); Contra, See Evans v. Dept. of Business Regulation, 2004 WL 2075132 (R.I. Super. 2004).

XI. Plaintiffs' Claim That Denial of Equal Protection By Discriminatory Intent Against Plaintiffs In Particular Is Somehow Proven By Statistics Alone Is Without Merit.

In this case Plaintiffs seek to use alleged statistics that purport to show generally that Defendants denied Plaintiffs their right to equal protection under the law because of:

a. the higher ratio of minority children removed from their parents as compared to non-minority children under the same or similar set of facts;
b. the higher ratio of "founded" incidents of abuse and neglect in minority families as compared to non-minority families under the same or similar set of facts;
c. the higher ratio of cases left open and followed by DCYF in minority families as compared to non-minority families under the same or similar set of facts;
d. failure to afford minority families the same reasonable investigations afforded non-minority families for allegations of abuse and neglect, prior to the removal of their children as compared to non-minority families under the same or similar set of facts;

and to somehow prove, without more, that Plaintiffs have been discriminated against and denied equal protection in this case because they are of a minority race.

There is simply no evidence whatsoever in this case which shows that anyone of the Defendants or anyone else at DCYF did or did not do anything in the investigation of or presentation of this case in the Family Court based upon Plaintiffs' race.

If there was any merit to such claims, they should have been raised in the Family Court as part of Plaintiffs' defense against the petition against him and evidence of racial discrimination specific to Plaintiff, if such existed should have been introduced at that

time. U.S. v. Bass, 122 S.Ct. 2389 (2002), McCleskey v. Kemp, 107 S.Ct. 1756 (1987), Miles Un-Ltd., Inc. v. Town of New Shoreham, 602 F.Supp. 238 (D.R.I. 1985).

## CONCLUSION

Based upon the foregoing, Defendants submit that they and each of them, in both their official and individual capacities, are entitled to Summary Judgment as a matter of fact and law.

Respectfully Submitted,

Defendants,
By their attorney,

PATRICK C. LYNCH
ATTORNEY GENERAL

Richard B. Woolley

Richard B. Woolley #1452
Assistant Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400 ext. 2293
Fax: (401) 222-2995

## CERTIFICATION

I, the undersigned, hereby certify that I sent via facsimile and first class mail, postage pre-paid, a true copy of the within Defendants' Memorandum of Law In Support of Motion for Summary Judgment on this 22nd day of June, 2006 to those indicated below:

Melissa S. DiFruzzo

Joseph R. Daigle, Esq.
Gelfuso & Lachut Inc.
1193 Reservoir Avenue
Cranston, RI 02920