D

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

PROVIDENCE, SC. FAMILY COURT

* * * * * * * * * * * *
IN RE: *
ERICA H. & *
DIONNE N. *
* * * * * * * * * * * *

Juv. No. P2001-0398-01

H E A R D B E F O R E:

HON. MR. JUSTICE PAUL SUTTELL

Providence County Family Court

On April 12, 2001

APPEARANCES:

FOR THE STATE...............PATRICIA PETRELLA, ESQ.

FOR THE FATHER.............ALAN GELFUSO, ESQ.

FOR THE FATHER.................MARUEEN GEMMA, ESQ.

THE COURT: This is the matter of Erica Hopkins and Dionne Nalls. The matter is before the Court on DCYF's petition alledging that Erica Hopkins and Dionne Nalls are neglected children. Respondant father, Ricardo Hopkins, was arraigned on March 1st, 2001, at which time he requested a probable cause hearing. The hearing commended on March 7th, 2001, following which respondant requested a continuance to enaable him to depose the individual who initiated the CANTS Invesigation, Crystal Jones. These petitions were filed as the result of an investigation begun by DCYF on or about February 13, 2001, when a social worker at Butler Hospital telephoned the CANTS hotline reporting that a patient had disclosed that she had been sexually molested. The patient, Crystal Jones, was nineteen years old at the time she made the disclosure, yet she was a committed child and in the care and custody of DCYF. During the course of the investigation, Ms. Jones told the DCYF child protective investigator, Karen DeGenova, that Ricardo Hopkins had sexually molested her on numerous occasions when she was between the ages of six and fourteen and in foster placement

with Mr. Hopkins' adoptive mother. Ms. DeGenova also interviewed respondant's three children, who revealed that their father would on occasion discipline them by tying their hands and feet and hitting them with a switch. At the conclusion of Ms. DeGenova's testimony at the probable cause hearing, respondant, who has steadfastly denied each and every accusation, requested a continuance in order to depose Crystal Jones. In the interum, however, he has filed and argued a motion to dismiss claiming in essence that Ms. Jones' disclosures do not constitute child abuse as statutorally defined, and therefore, DCYF not only lacked legal authority to conduct the subsequent investigation, but that it conducted the investigation in violation of its own rules and guidelines. As a consequence, Mr. Hopkins has been deprived of his constitutionally protected right to due process. The petitions should be therefore dismissed and all DCYF records and findings expunged on the theory that the original investigation is tainted and all evidence and findings obtained in furtherance thereof are nothing more than fruit from a

poisonous tree. At first blush, it struck me that the investigation slowly fell within the general powers conferred upon DCYF to protect children, particularly in light of the public policy of this state as set forth in Chapter 40-11 of the general laws entitled, "Abused and neglected children," which policy is: "to protect children whose health and welfare may be adversely affected through injury and neglect; to strenthen the family and to make the home safe for children by enhancing the parental capacity for good child care; to provide a temporary or permanent nurturing and safe environment for chidren when necessary; and for these purposes to require the mandatory reporting of known or suspected child abuse and neglect, investigation of those reports by a social agency and providing of services where needed to the child and family." The respondant, however, has raised several serious issues regarding DCYF's statutory authority to investigate reports of alledged child abuse. Clearly, Crystal Jones, is not a child within the meaning of the child abuse and neglect statute. She is nineteen years old, and

although committed to the care and custody of DCYF, unlike Section 42-72-3, the definition of child in 40-11-2, specifically does not include children over eighteen years of age who are subject to the continuing jurisdiction of the Family Court. As Ms. Jones is not a child, she cannot be an"abused and/or neglected child as defined in 40-11-2, and therefore, is not among the universe of people who Chapter 40-11 is designed to protect. But surely allegations that she may have been sexually molested between the ages of six and fourteen by respondant, a man ten years her senior, raises serious concerns about the welfare of any child for whom he may be responsible. Respondant places great emphasis on DCYF administrative rules for screening child abuse and/or neglect reports. A DCYF worker must find that: The circumstances reported, if true, would constitute child abuse or neglect as that harm must be present." With respect to the first requirement, the circumstances, if true, do constitute child abuse or neglect, albeit, abuse or neglect that occurred over five years ago. Ms. Jones reported that respondant molested her between

the ages of six and fourteen while in placement in a DCYF licensed foster home. It therefore, would have raised serious concerns about the lack of supervision within that foster home. The fact that the alledged abuser would not be a perpetrator of child abuse or neglect as defined by statute, does not change the character of the original circumstances. With respect to the second requirement, respondant contends that the alleged abuser, even if true, until four or six years ago, that Ms. Jones is not being harmed or threatened with harm, and moreover, Mr. Hopkins is not a person responsible for her welfare. All of those statements are true, however, these petitions were not filed to protect Crystal Jones, rather they were filed to protect Erica Hopkins and Dionne Nalls. Defined by Rhode Island State Laws, and there is "reasonable cause to believe that abuse and/or neglect circumstances exist or it could hardly be argued from what is now generally accepted about persons who sexually abuse children, that an identified child molester, at least until such time as he or she successfully completes treatment, does not pose a risk of harm to any

child that may come under his or her care. Judge Hurst made this very clear in Marold versus Fendetti, wherein she wrote: The State unquestionably possesses a strong interest in protecting children from the infliction of physical harm and from exposing them to the risk of sexual predators." It may be argued that the Butler Hospital social worker had no duty to notify DCYF of Crystal's disclosures given the fact that she was nineteen years old. But once having been notified, I believe, DCYF had an obligation to investigate, not necessarilly because such an investigation was mandated by 40-11-7, but rather because it falls within the purview of its responsibilities under 40-11-7 and Chapter 42-72, particularly in light of the fact that Crystal Jones, even though nineteen years old, is still committed to the care and custody of DCYF and thus the department remains responsible for her welfare; and secondly, that respondant was employed at Whitmarsh, a group home for children and DCYF is statutorally responsible for the certification of all child care personnel as well as for the administration of the CANTS system. Respondant cites the Marold

case for the proposition that "by definition an act of child abuse or neglect can only be committed by a person responsible for the child's welfare." That case also states, however, "that a perpetrator of an act of abuse or neglect may ultimately be determined to be a person not falling within the statutory definition of responsible person should not hinder the DCYF's investigation powers so long as the investigation is legitimately instituted." In this case, I find that the investigation was legitimately instituted for the above stated reasons, namely that Crystal was a committed child and respondant an employee of a child care facility, as well as for the fact that the reported abuse allegedly occurred in a DCYF licensed foster home, albeit the license is no longer active. Moreover, as Erica and Dionne are the children alleged to be at risk in the pending petitions, respondant is clearly a person responsible for their welfare. There is no question that for respondant, very significant institutionally protected rights are at stake. But, unlike Jason Marold, the alleged perpetrator in the Marold versus

Fendetti case, Mr. Hopkins is being afforded the opportunity to challenge the factual findings of DCYF's investigation which led to his inclusion in the CANTS reporting system. Neither the statute nor administrative rules require DCYF child protective investigators to be former FBI agents or graduates of the police training academy. Their function is to investigate allegations of child abuse and/or neglect in order to protect children, not for possible criminal prosection. For the foregoing reasons, this Court finds that DCYF did have the authority to conduct an investigation following the disclosures of Crystal Jones. Respondant's motion is therefore denied. Once the department substitutes the allegations and files a petition, it is up to the Court to determine whether removal of the child or othr interim orders are appropriate. In this particular case, we are in the middle of a probable cause hearing and respondant is not yet had a full opportunity to present his case. Nevertheless, we heard many arguments, and I have had the occasion to review numerous documents during my in camera inspection of DCYF records. Regarding

Crystal Jones. So, I think I have a pretty good sense of where we stand with respect to the probable cause proceedings. DCYF's case is predicated upon statements made by Crystal to the child protective investigator. They are hearsay statements to be sure, yet permissible in probable cause hearings. They constitute "credible hearsay" if for no other reason than the original disclosures were made in a hospital setting, presumably for the purposes of diagnosis or treatment. These statements are deemed so reliable that they constitute an exception to the rule against hearsay evidence. Standing alone, prior to any possible undermining of the case by respondant, DCYF has presented sufficient evidence to meet its threshhold burden at a probable cause hearing. DCYF's case against Mr. Hopkins is based primarilly upon two allegations: That he committed acts of sexual abuse against Crystal Jones; and that he inappropriately disciplined his own children by using excessive corporal punishment. Mr. Hopkins vigorously denies such allegations. Even at this stage of the proceedings, however, these are certain matters

that seem abundantly clear. First, the allegation of sexual abuse will necessarilly rise or fall upon the credibility of Crystal Jones. As she has not yet testified in person, the Court is little able to access her credibility at this stage. The respondant, so far, has presented one witness, Sarah Hopkins. Although related to respondant, this Court finds her to be a very credible witness. Her testimony, while not precluding the fact that respondant may have molested Ms. Jones, it seems to make it less likely to have occurred, given Miss Hopkins testimony that she and Crystal Jones spent so much time together and were such close friends. Also, she contradicted Ms. Jones' statements in one significant aspect when she testified that Mr. Hopkins had never molested her. Secondly, even if the allegations are true, the abuse last occurred over five years ago and DCYF has no evidence that Mr. Hopkins has sexually molested any other child during that period. On the contrary, he has been employed in the child care field without any reported incidents. With respect to the allegations of inappripriate discipline, there

or any one else for that matter, for the past five or six years. There is no evidence, whatsoever, that he ever sexually abused either Erica Hopkins or Dionne Nalls. There is no evidence that he has ever acted inappropriately with any child at Whitmarsh, or any other child care facility at which he may have been employed. The allegations of excessive corporal punishment, even if proven, appear to have been motivated by an attempt to discipline the children. Inappropriate as that attempt may have been, rather than by a malicious attempt to harm them. Consequently, even if DCYF were to sustain its burden of probable cause, I do not believe that Mr. Hopkins presents a risk of harm to Erica, the only child with whom he was living, such that it is necessary to remove him from his home pending final resolution of these petitions, provided that his contact with Erica and Dionne be supervised and provided further that he be restrained and enjoined from exercising any physical discipline or corporal punishment whatsoever on any child.

Accordingly, Ricardo Hopkins is allowed to return to his home. He is hereby restrained and

enjoined from having any unsupervised contact with any child that is a subject of these pending petitions, and he is further restrained and enjoined from exercising any form of physical discipline whatsoever including corporal punishment, on any child.

MS. PETRELLA: The department is going to request a stay of this order that this father be allowed to return home.

THE COURT: Why don't you approach.