**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND**

RICARDO HOPKINS, Individually and as Parent and Next of Kin to DIONNE NALLS And ERICA HOPKINS

V. C.A. NO.: 04-373L

THE STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS; DEPARTMENT OF CHILDREN, YOUTH & FAMILY, JAY G. LINDGREN, JR., Individually and in his Capacity As Director of DCYF; THOMAS M. BOHAN, ESQ., Individually and in his Capacity as Executive Director Administration; THOMAS DWYER, Individually and In his Capacity as Associate Director Child Welfare Services; KEVIN AUCOIN, Individually and in his Capacity as Chief Legal Services, SUZAN MORRIS, Individually and in her Capacity as Senior Legal Counsel; PARTRICIA PETRELLA, Individually and in her Capacity as Legal Counsel to DCYF; ELLEN BALASCO, Individually and in her capacity as Legal Counsel to CASA; KAREN DEGENOVA, Individually and in her Capacity as a DCYF Investigator

# DEFENDANTS' OPPOSITION TO PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS

**As to Plaintiffs' first Statement of Undisputed Facts**

Throughout Karen DeGenova's investigation of Ricardo Hopkins, she sought the advice and instructions of her immediate supervisor Edward Albanese and DCYF Legal Counsel and although she had only been a Child Protective Investigator for a few months at the time she investigated the allegations against Ricardo Hopkins, she had already worked for DCYF as a Family Services Unit Social Worker since 1997 and received a month of daily training before starting as a CPI. Plaintiffs' attempt to portray this investigation as being done solely by an inexperienced investigator is baseless.

**As to Plaintiffs' Statement of Undisputed Facts Numbered 2, 3, 4, 5, 6, 7, 8, 9, 10, 14 and 15**

Plaintiffs persist in ignoring the irrefutable fact that on April 12, 2001 Judge Suttell made the following findings on the record:

"The respondent, however, has raised several serious issues regarding DCYF's statutory authority to investigate reports of alleged child abuse. Clearly, Crystal Jones , is not a child within the meaning of the child abuse and neglect statute. She is nineteen years old, and although committed to the care and custody of DCYF, unlike Section 42-72-3, the definition of child in 42-11-2, specifically does not include children over eighteen years of age who are subject to the continuing jurisdiction of the Family Court. As Ms. Jones is not a child, she cannot be an "abused and/or neglected child as defined in 40-11-2, and therefore, is not among the universe of people who Chapter 40-11 is designed to protect. But surely allegations that she may have been sexually molested between the ages of six and fourteen by respondent, a man ten years her senior, raises serious concerns about the welfare of any child for whom he may be responsible. Respondent places great emphasis on DCYF administrative rules for screening child abuse and/or neglect reports. A DCYF worker must find that: "The circumstances reported, if true, would constitute child abuse or neglect as that harm must be present." With respect to the first requirement, the circumstances, if true, do constitute child abuse or neglect, albeit, abuse or neglect that occurred over five years ago. Ms. Jones reported that respondent molested her between the ages of six and fourteen while in placement in a DCYF licensed foster home. It therefore, would have raised serious concerns about the lack of supervision within that foster home. The fact that the alleged abuser would not be

a perpetrator of child abuse or neglect as defined by statute, does not change the character of the original circumstances. With respect to the second requirement, respondent contends that the alleged abuser, even if true, until four or six years ago, that Ms. Jones is not being harmed or threatened with harm, and moreover, Mr. Hopkins is not a person responsible for her welfare. All of those statements are true, however, these petitions were not filed to protect Crystal Jones, rather they were filed to protect Erica Hopkins and Dionne Nalls. Defined by Rhode Island State Laws, and there is "reasonable cause to believe that abuse and/or neglect circumstances exist or it could hardly be argued from what is now generally accepted about persons who sexually abuse children, that an identified child molester, at least until such time as he or she successfully completes treatment, does not pose a risk of harm to any child that may come under his or her care. Judge Hurst made this very clear in Marold versus Fendetti, wherein she wrote: "The State unquestionably possesses a strong interest in protecting children from the infliction of physical harm and from exposing them to the risk of sexual predators." It may be argued that the Butler Hospital social worker had no duty to notify DCYF of Crystal's disclosures given the fact that she was nineteen years old. But once having been notified, I believe, DCYF had an obligation to investigate, not necessarily because such an investigation was mandated by 40-11-7, but rather because it falls within the purview of its responsibilities under 40-11-7 and Chapter 42-72, particularly in light of the fact that Crystal Jones, even though nineteen years old, is still committed to the care and custody of DCYF and thus the department remains responsible for her welfare; and secondly, that respondent was employed at Whitmarsh, a group home for children and DCYF is statutorily responsible for the certification of all child care personnel as well as for the

administration of the CANTS system. Respondent cites the Marold case for the proposition that "by definition an act of child abuse or neglect can only be committed by a person responsible for the child's welfare." That case also states, however, "that a perpetrator of an act of abuse or neglect may ultimately be determined to be a person not falling within the statutory definition of responsible person should not hinder the DCYF's investigation powers so long as the investigation is legitimately instituted." In this case, I find that the investigation was legitimately instituted for the above stated reasons, namely that Crystal was a committed child and respondent an employee of a child care facility, as well as for the fact that the reported abuse allegedly occurred in a DCYF licensed foster home, albeit the license is no longer active. Moreover, as Erica and Dionne are the children alleged to be at risk in the pending petitions, respondent is clearly a person responsible for their welfare. There is no question that for respondent, very significant institutionally protected rights are at stake. But, unlike Jason Marold, the alleged perpetrator in the Marold versus Fendetti case, Mr. Hopkins is being afforded the opportunity to challenge the factual findings of DCYF's investigation which led to his inclusion in the CANTS reporting system. Neither the statute nor administrative rules require DCYF child protective investigators to be former FBI agents or graduates of the police training academy. Their function is to investigate allegations of child abuse and/or neglect in order to protect children, not for possible criminal prosecution. For the foregoing reasons, this Court finds that DCYF did have the authority to conduct an investigation following the disclosures of Crystal Jones. Respondent's motion is therefore denied." (See Exhibit A, April 12, 2001 transcript)

Plaintiffs may not agree with Judge Suttell's ruling. However, they waived their readily available opportunity to challenge the Judge's decision by dismissing their petition for certiorari, wherein they challenged the Court's ruling, in the Rhode Island Supreme Court, with prejudice in December, 2003.

**As to Plaintiffs Statement of Undisputed Facts number 16 and its exhibit #3**

It should be noted that Plaintiffs' exhibit 3 contains only 2 pages from a 12-page document. Page 12 of the document contains the following State of Rhode Island comment on the data contained in the report:

> "Rhode Island's comments on State data presented in Child Welfare Outcomes 2001: Report to Congress are the following:
>
> The State of Rhode Island is pleased once again to submit our comments as part of the Child Welfare Outcomes Annual Report. We are very proud of our accomplishments and are using the federal outcome measures to improve the services we provide to children, youth, and families.
>
> Rhode Island has made significant progress in reducing the amount of missing or incomplete data.
>
> It is important to note that the data submitted to AFCARS for our children in foster care include not only traditional child welfare youth, but also juvenile justice, children's mental health and developmentally disabled youth. We believe that this additional population impacts both average length of stay as well as the proportion of youth in group care.
>
> RI is very aggressive in investigating child abuse reports that have been disclosed by the victim after the initial child abuse investigation has begun but which relate to incidents of child abuse and neglect prior to the initial opening. These reports impact Outcome Measure 1 as they appear to be incidents of repeat abuse because the report date occurs after the initial report is received.

> RI data includes indicated allegations of corporeal punishment by foster parents which is prohibited by RI law. Institutional abuse includes the state's juvenile detention facility and private psychiatric hospitals. These factors impact Outcome Measure 2."
>
> (Emphasis added – See Exhibit B attached hereto)

The inclusion of juvenile justice youth, children's mental health youth and developmentally disabled youth in the data in the report skews the data and it is neither appropriate or probative of the "fact" plaintiffs purport to establish by it in their statement of undisputed fact number 16.

**As to Plaintiffs' Statement of Undisputed Fact number 17**

It fails to disclose that Plaintiffs had a full, fair opportunity to depose Crystal Jones on 2 occasions, the first being on March 29, 2001 commencing at 1:00 p.m. and suspended at 4:32 p.m. that same date, consisting of 52 pages (not including the post deposition comments obtained by Attorney Gelfuso). That transcript shows that the Court ruled on objections and the deposition proceeded. On May 16, 2001 the

Deposition of Crystal Jones was commenced at 1:05 p.m. and was concluded at 2:30 p.m. by Plaintiffs' counsel Maureen Gemma.

**As to Plaintiffs' Statement of Undisputed Facts 19 and 20**

Kevin Aucoin testified at deposition that he thought that generally the DCYF Licensing and Contracts Unit would handle notification of an employer about disqualifying information about their employees. Thomas Bohan testified at Deposition that someone from DCYF Programmed Development, Contracts and Standards Unit would have communication with the employer about disqualifying information regarding their employees. Craig Gordon of Communities for People testified at Deposition that he received a phone call from "Our program monitor with the Department of Children and Their Families notifying me that Rick Hopkins was indicated for disqualifying information as a result of an allegation of abuse or neglect, and that he was immediately to be taken off shift."

**As to Plaintiffs' Statement of Undisputed Facts Number 23**

Defendants submit that Ricardo Hopkins' reunification with his son was at all times subject to the jurisdiction and control of the Family Court. The Family Court made such reunification subject to recommendations made by Therapist Haven Miles in the context of a pending Family Court case involving the mother of Ricardo's son Dionne. Haven Miles recommended that DCYF establish a reunification calendar, with steadily increased amounts of visitation leading to full placement with the father by the end of a six week period. The Department arranged the "visitation calendar" to assist with the reunification process. The six week transitional period was completed during the weekend of 11/30/01 and shortly thereafter Ricardo Hopkins' son was placed with him.

Respectfully Submitted,

Defendants,
By their attorney,

PATRICK C. LYNCH
ATTORNEY GENERAL

*/s/ Richard B. Woolley*

______________________________

Richard B. Woolley #1452
Assistant Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400 ext. 2293
Fax: (401) 222-2995
rwoolley@riag.ri.gov

**CERTIFICATION**

I, the undersigned, hereby certify that I sent via first class mail, postage pre-paid, a true copy of the within document on this _____ day of August, 2006 to those indicated below:

*/s/ Richard B. Woolley*

______________________________

Joseph R. Daigle, Esq.
Gelfuso & Lachut Inc.
1193 Reservoir Avenue
Cranston, RI 02920